FILED

MAR 18 2024

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY ______ DEPUTY CLERK

GAVIN B. DAVIS, Pro Per (#00197510)
DEFENDANT
KCDF
810 Commerce St.
Karnes City, Texas 78118

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

SA24CA0284 FB

| | |
|---|---|
| GAVIN B. DAVIS,<br>Plaintiff,<br><br>vs.<br><br>GLOBAL TEL*LINK CORPORATION ("GTL") d/b/a VIAPATH TECHNOLOGIES ("ViaPath"),<br>Defendant. | Case No.: ______________<br><br>COMPLAINT<br><br>JURY DEMAND |

# TABLE OF CONTENTS


TABLE OF POINTS AND AUTHORITIES ........ 3

A. PARTIES ........ 5

B. JURISDICTION ........ 5

C. VENUE ........ 6

D. CONDITIONS PRECEDENT ........ 6

E. FRCP 8 STATEMENT ........ 6

F. STATEMENT OF FACTS ........ 7

G. ARGUMENT IN SUPPORT ........ 7

H. REQUEST FOR RELIEF ........ 10

I. JURY DEMAND ........ 10

J. DAMAGES ........ 11

K. ATTORNEYS FEES & COSTS ........ 11

L. CERTIFICATION AND CLOSING ........ 12

# TABLE OF POINTS AND AUTHORITIES

## Cases

*Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 604 (2001) ........ 12
*Chauffeurs, Teamsters & Helpers Local No. 391 v. Terry*, 494 U.S. 558, 564-65 (1990) ........ 11
*City of Monterey v. Del Monte Dunes, Ltd.*, 526 U.S. 687, 708-09 (1999) ........ 10
*Curtis v. Loether*, 415 U.S. 189, 193-194 (1974) ........ 10
*Daniel Int'l Corp. v. Fishbach & Moore, Inc.*, 916 F.2d 1061, 1064 (5th Cir. 1990) ........ 11
*Parrott v. Wilson*, 707 F.2d 1262, 1267 (11th Cir. 1983) ........ 11
*TG Plastics Trading Co. v. Toray Plastics (Am.), Inc.* 775 F.3d 31, 36 (1st Cir. 2014) ........ 11
*United States v. Balistrieri*, 981 F.2d 916, 927-28 (7th Cir. 1992) ........ 11

## Statutes

15 U.S.C. § 13 (b) ........ 9
15 U.S.C. § 13 (c) ........ 9
15 U.S.C. § 13 (d) ........ 9
15 U.S.C. § 13 (f) ........ 9
15 U.S.C. §§ 1, 13 ........ 5
15 U.S.C. §§ 1, 2 ........ 8
28 U.S.C. § 1391 (b)(2) ........ 6
28 U.S.C. § 1746 ........ 12
28 U.S.C. §§ 1915 (e)(1) ........ 11
42 U.S.C. §§ 2000(e), 5(f)(1) ........ 11
47 U.S.C. § 201 (b) ........ 7
47 U.S.C. §§ 201, 202, 276 ........ 5, 7

## Other Authorities

Clayton Act ........ 8
Consumer Goods Pricing Act (1975) ........ 8
Federal Communications Act ("FCA") ........ 5
Sherman Act ........ 5, 6, 8

## Rules

FRCP 11 ........ 6, 12
FRCP 23 ........ 11
FRCP 23 (a) ........ 11
FRCP 23 (b)(3) ........ 11
FRCP 38 (b)(2) ........ 10
FRCP 39 (a)(2) ........ 11

FRCP 8 ........ 6
FRCP 9(c) ........ 6

**Constitutional Provisions**

Seventh Amendment ........ 11

## A. PARTIES

1. Plaintiff, Mr. Gavin B. Davis (the "Plaintiff" or "Mr. Davis"), is an individual that is, at present, a citizen of the United States of America. He holds a Bachelor of Science degree from Cornell University; and has previously been employed by Ackman-Ziff (Headquartered, New York City), CBRE, CIBC World Markets and his own small businesses. Most recently, Mr. Davis is an independent contractor with an established futures, commodities and forex trading firm based in Chicago, IL. Being unlawfully detained at present[1], service of process for the Plaintiff may be completed to the address on the cover of the filing.

2. Defendant, Global Tel*Link Corporation ("GTL") is a telecommunications provider for inmates housed in certain detention centers, prisons and jails and other facilities throughout the country. Specific to this Complaint, GTL is doing business as ViaPath Technologies ("ViaPath") and may be served at 3120 Fairview Park Drive, Suite 300, Falls Church, VA 22042 (Attn: Legal Department). In addition, GTL utilizes TouchPay Holdings, LLC doing business as GTL Financial Services, a licensed money transmitter and wholly owned subsidiary of GTL / ViaPath to process all trust transactions. Other relevant closely related parties to the Defendant relevant to the Complaint may include but not be limited to GTL Enchanced Services, LLC; DSI-ISI, Inc.; Innertainment Delivery Systems, LLC; Public Communications, Services, Inc.; Renovo Software, Inc.; Value-Added Communications, Inc. Under the Federal Communications Act ("FCA"), the Defendant (as broadly interpreted to include pertinent affiliates, subsidiaries, partners, etc.), operates, in part, as an ICS Provider.

## B. JURISDICTION

3. The Court has proper jurisdiction over the lawsuit as:

(a) the Defendant is in violation of the Federal Communications Act ("FCA") (47 U.S.C. §§ 201, 202, 276) (*Count #1*);

(b) the Defendant is in violation of the Sherman Act (15 U.S.C. §§ 1, 13) (*Count #2*); and,

---

[1] See e.g. USDC WD TX, 22-219, Dkt. 171, 173, 175, 184, 185 (also IAC at Dkt. 109); and 5th Cir., 23-50812 / 23-50917, 28 U.S.C. § 1291 interlocutory appeals from underlying 22-219, FRAP 9 Motion therein.

(c) by virtue of monopoly power, as ordinarily inferred from the predominant share of the market[2]; and through its violations of the FCA and the Sherman Act, the Defendant is liable for Unjust Enrichment (*Count #3*);

4. In good faith, the Plaintiff is concurrently making reasonable efforts to address the Issues directly with the Defendant prior to commencing litigation. However, given the broad class scope to the claims, Plaintiff believes that a comprehensive class settlement (e.g. via (i) Alternative Dispute Resolution methods) is inevitable rendering the Plaintiff, himself, unable to collectively bargain or negotiate prematurely prior to the building of a representative class and the attachment of an attorney(s) for the plaintiffs.

## C. VENUE

5. Venue is proper in the United States District Court for the Western District of Texas (USDC WD TX) under 28 U.S.C. § 1391 (b)(2), in which, a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated.

## D. CONDITIONS PRECEDENT

6. All conditions precedent have been formed or have occurred as is sufficient and generally alleged under FRCP 9 (c). This filing is also FRCP 11 compliant.

7. While multiplication of cases within the federal system or across the federal and state systems is a common characteristic of complex litigation, no matters herein have been litigated, or ruled upon, of this complaint, on its own accord or face, to the knowledge of the Plaintiff.

## E. FRCP 8 STATEMENT

8. Plaintiff, and similarly situated persons, as a detainee at Karnes County Detention Facility ("KCDF")[3] in Karnes City, Texas, is being overcharged by the Defendant for iHeart Radio music streaming services vis-à-vis that of a person in the real world by order of magnitude: $0.05 per minute (or $3.00 per hour), which is well in excess of iHeart's unlimited music streaming service for persons at liberty, generally near fifteen dollars

[2] In this case, "market" represents a captive (pardon the pun) audience with no legitimate alternatives to the services or product offered by the Defendant specific to the Complaint

[3] Or other facilities with similar services and pricing structures as the case may be.

($15.00) per month (i.e. a twelve-to-fifteen times (12-15x) mark-up). Defendant is in violation of the Federal Communications Act (FCA) (*claim #1*); the Sherman Act (*claim #2*); and, also liable for unjust enrichment[4] (*claim #3*).

## F. STATEMENT OF FACTS

9. Plaintiff, and similarly situated persons, as a detainee at Karnes County Detention Facility ("KCDF") in Karnes City, Texas, is being overcharged for iHeart Radio music streaming services vis-à-vis that of a person in the real world by order of magnitude. ($0.05 per minute (or $3.00 per hour), which is well in excess of iHeart's unlimited music streaming service for persons at liberty, generally near fifteen dollars ($15.00) per month, near seven-to-eight percent (7-8%) market based pricing)

## G. ARGUMENT IN SUPPORT

*Claim #1*

10. The Federal Communications Commission ("FCC") regulates interstate and international communications by radio, television, wire, satellite and cable. The FCC interprets and applies the Federal Communications Act (FCA) (47 U.S.C. §§ 201, 202, 276), which regulates (i) inmate telephone services (as precedent and antiquated) as a form of payphone services; as well as other (ii) technological services (as recent with the advancement of time, services, technology and offerings) in correctional facilities as a form of communication, entertainment or other regulated service and/or product.

11. The FCA requires ICS providers, such as the Defendant, to charge only "just and reasonable" rates for its services provided to detainees, inmates, or as otherwise relevant (such as the Plaintiff and similarly situated persons) (see e.g. 47 U.S.C. § 201 (b)).

12. As has been demonstrated, or shall be further demonstrated upon due process, the Defendant has clearly charged unreasonable rates for its services in delivering streaming music from iHeart Radio to the Plaintiff, and similarly situated persons.

[4] Not an independent cause of action; but related to the prior two claims.

*Claim #2*

13. The Sherman Act related to antitrust / restraint of trade as also related to the Consumer Goods Pricing Act (1975), provides that a person(s), such as the Plaintiff (and similarly situated persons), have standing to litigate if:

(a) the Plaintiff demonstrates injury-in-fact proximately caused by the Defendant's conduct;

(b) there exists antitrust injury of the type that antitrust laws are intended to prevent; and,

(c) a plaintiff, such as the Plaintiff (and similarly situated persons) have proper status (i.e. other parties are not better situated to bring the suit)[5]

(see e.g. 15 U.S.C. §§ 1, 2)

14. Competition status is not required for standing. Relief for antitrust claims is not confined to consumers, or to purchasers, or to competitors or to sellers. The Sherman Act is comprehensive in its terms and coverage, protecting all who are made victims of the forbidden practices, such as the Plaintiff and similarly situated persons.

15. In this controversy, the Defendant's monopoly power may be inferred from its control of the market; where its monopoly power may be defined as its power to control prices or exclude competition (as it has done; and, done unreasonably and in violation of law, causing harm and injury, in turn unjustly enriching itself and/or related parties).

16. The Defendant is in violation of antitrust provisions of the Sherman Act; and whereby, there does in fact exists a regulatory structure which is intended to monitor and enforce fair dealings in the industry of question. (Recovery under the Clayton Act, 15 U.S.C. § 15, requires proof of antitrust impact, which in turn requires proof of the relevant market) (in this case and controversy, proof of: (a) Defendant's monopolistic position is obvious on its face (i.e. prima facie); (b) Defendant's unreasonable and unlawful pricing, estimated to be twelve-to-fifteen times (12-15x) that of a non-captive audience (the burden of proof here, given the large pricing disparity, is quite low, though perhaps subject to production of certain documents due under relevant discovery Rules. It is easy to establish with common proof what each purchaser would have paid in the "actual world" relative to what purchasers, or as also relevant in this case, prospective purchasers unable or unwilling to pay such inflated pricing, would have paid but for the Defendant's

[5] The Plaintiff is unaware of any precedent litigation for these specific claims against the Defendant; and, therefore, the Plaintiff's standing is, in fact, proper.

anticompetitive monopolistic pricing practices.) (Plaintiff has met the 15 U.S.C. § 13 (b)) burden: the class is relatively straightforward, being that of (i) pretrial detainees, such as the Plaintiff and similarly situated persons at KCDF; (ii) pretrial detainees at other facilities being offered the same service at inflated pricing vis-à-vis persons in the real world; as well as, subject to discovery, (iii) customers of the Defendant, such as the GEO Group, Inc. or related parties, utilizing a substantially similar contractual framework to overcharge captive audiences, such as the Plaintiff and similarly situated persons)

17. Pursuant to 15 U.S.C. § 13, discrimination in price, services, or facilities, as demonstrated, the Defendant is overcharging, by order of magnitude, the Plaintiff (and similarly situated persons) for its iHeart Radio music streaming service relative to non-captive persons.

18. Pursuant to 15 U.S.C. § 13 (c), payment or acceptance of commission, brokerage or other compensation, the Defendant (as reasonably inferred and broadly interpreted to encapsulate pertinent partners (e.g. those enjoying renumeration or other benefit directly or proximately related to the violations of federal law brought forth herein); affiliates, subsidiaries, etc.) is benefiting by virtue of its monopolistic position vis-à-vis the Plaintiff, and similarly situated persons;

19. Pursuant to 15 U.S.C. § 13 (d), payment for service, or facilities for processing for sale, as it is unlawful to receive payment(s) "unless such payment or consideration is available on proportionally equal terms to all other customers competing in distribution of such products or commodities" Clearly, this is not the case with respect to the Defendant and its captive audience, including the Plaintiff and similarly situated persons.

20. Pursuant to 15 U.S.C. § 13 (f), Plaintiff contends that the Defendant does, in fact, knowingly induce and/or receive benefit from its discriminatory pricing policies in providing the iHeart Radio music streaming app to its captive audience such as the Plaintiff and similarly situated persons.

21. The Defendant's price fixing (irrespective of bundling with other apps; certainly, such service could be provided a la carte, and the fact that it is not, is evidentiary in its own right, of seeking to slyly perpetuate such antitrust and other violations to its benefit and the Plaintiff (and similarly situated persons) detriment) is per se unlawful. (Plaintiff intends to proffer a Damages Study analyzing the economic impact of the

Defendant's violations brought forth herein and in development hereof provided due process).

*Claim #3*

22. Although unjust enrichment is not an independent cause of action (it is, rather, related to the two (2) aforementioned claims), it characterizes the result of failure to make restitution of benefits either wrongfully or passively received under circumstances that give rise to an implied or quasi-contractual obligation to repay.

23. In this case and controversy, the Plaintiff has met the burden of demonstrating the prima facie case of unjust enrichment by clear and specific evidence of the large pricing disparity between the Defendant's offering of iHeart Radio music streaming service to that of persons in the "real world". The Defendant is clearly and fraudulently taking undue advantage of its position with a captive audience such as the Plaintiff and similarly situated persons.

## H. REQUEST FOR RELIEF

24. The Plaintiff is seeking monetary damages, other damages and other equitable redress.

25. The Plaintiff requests that the Court grant any other relief that it deems appropriate.

## I. JURY DEMAND

26. This Jury Demand and Notice is timely, as it is made at any time after the commencement of the suit, but not later than service of the last live pleading. Further, all parties have been properly served and no party shall attempt, in bad faith, technical default on the issue of jury demand, herein.

27. Jury Demand is herein FRCP 38 (b)(2) compliant.

28. Plaintiff has preserved his right of a trial by jury as provided in the 7th Amendment to the U.S. Constitution or by federal statute (see *City of Monterey v. Del Monte Dunes, Ltd.*, 526 U.S. 687, 708-09 (1999); *Curtis v. Loether*, 415 U.S. 189, 193-194 (1974)).

29. There is a federal right to jury trial in this case under FRCP 39 (a)(2), and supporting case law. (*Chauffeurs, Teamsters & Helpers Local No. 391 v. Terry*, 494 U.S. 558, 564-65 (1990); also, *United States v. Balistrieri*, 981 F.2d 916, 927-28 (7th Cir. 1992)).

30. No parties, hereto, have waived the right to a jury trial, in whole, or in part. (*Parcor Fin., Inc., v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1166 (9th Cir. 1996)).

31. This case involves issues that are best tried by a jury. (*Daniel Int'l Corp. v. Fishbach & Moore, Inc.*, 916 F.2d 1061, 1064 (5th Cir. 1990); *Parrott v. Wilson*, 707 F.2d 1262, 1267 (11th Cir. 1983)).

32. A jury trial will not disrupt the schedule of the court, or any party to the proceeding, where such right (Seventh Amendment) outweighs any potential disruption. (*TG Plastics Trading Co. v. Toray Plastics (Am.), Inc.* 775 F.3d 31, 36 (1st Cir. 2014); see also *Daniel Int'l Corp. v. Fishbach & Moore, Inc.*, 916 F.2d 1061, 1064 (5th Cir. 1990); *Parrott v. Wilson*, 707 F.2d 1262, 1267 (11th Cir. 1983))

## J. DAMAGES

33. As a result, directly or indirectly, though with explicit liability, of the conduct of the Defendant, the Plaintiff, has suffered monetary and other injuries.

## K. ATTORNEYS FEES & COSTS

34. Plaintiff reserves the right to request appointment of individual counsel under 28 U.S.C. §§ 1915 (e)(1) and separately, 42 U.S.C. §§ 2000(e), 5(f)(1), at any future time. Also, as Plaintiff see the claims are ripe for FRCP 23 status, appointment of an attorney would be appropriate, if the parties are expanded to include additional detainees in the formation of a representative class.

35. Pursuant to FRCP 23 (a), this Complaint and claims meet the numerosity and commonality requisites. Further, under FRCP 23 (b)(3), the requisites of predominance and superiority in this controversy exist, prima facie. The Plaintiff seeks to certify a class which, generally, describes all individuals in the U.S. who either: (i) purchased the Defendant's $0.05 per minute services inclusive of its iHeart Radio music streaming service; or (ii) prospectively would have liked to have purchased such service but did not given the large pricing disparity of such service relative to the real world. Plaintiff's claims herein are typical for class certification purposes as such events, practices,

or course of conduct by the Defendant that give rise to the claims herein are the same and based on the same legal theories.

36. Irrespective of self-litigant status, or future attorney(s) representing the Plaintiff, under *Buckhannon*[6], the Plaintiff is entitled to reasonable attorneys fees and costs, as expressly reserved.

## L. CERTIFICATION AND CLOSING

Under FRCP 11, by signing below, I certify to the best of my knowledge, information and belief that this Filing and accompaniments: (a) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (b) is supported by existing law; (c) the factual contentions have evidentiary support, or if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (d) the filing otherwise complies with the requirements of Rule 11.

DATE: 3/12/24

Mr. Gavin B. Davis, Pro Per
PLAINTIFF

## M. DECLARATIONS MADE UNDER PENALTY OF PERJURY

All matters herein by the Defendant are so declared under penalty of perjury as true and correct to the best of my knowledge and so declared as true and correct under penalty of perjury pursuant to 28 U.S.C. § 1746.

DATE: 3/12/24

Mr. Gavin B. Davis, Individually
PLAINTIFF

3/12/24

MIRANDA CANO
Notary Public, State of Texas
Comm. Expires 04-14-2027
Notary ID 134308346

[6] *Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 604 (2001)